UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WADE HARRISON PAMON | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 09 C 5034 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF ILLINOIS | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

Plaintiff Wade Harrison Pamon, proceeding *pro se*, filed a complaint accusing the Board of Trustees of the University of Illinois ("the Board")[1] of violating the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. The Board has moved for summary judgment, and separately has moved to strike or deem admitted portions of Pamon's summary judgment pleadings. For the reasons stated below, the Board's motion to strike is granted in part and denied in part, and the Board's motion for summary judgment is granted.

## I. BACKGROUND[2]

Pamon was hired as a police officer with the University of Illinois at Chicago ("UIC") in April 1988. Thirteen years later, he suffered a cerebral hemorrhage and was diagnosed with having an arteriovenuos malformation, or AVM. Thereafter, Pamon went

---

[1] Pamon initially named University of Illinois at Chicago ("UIC") as the defendant; in his second amended complaint, however, Pamon correctly named the Board.

[2] Pamon has not properly contested many of the facts set forth by the Board. *See* L.R. 56.1(b). The facts set forth herein are either uncontested or have been deemed admitted due to Pamon's failure to comply with the local rules. *See Greer v. Bd. of Educ. of City of Chi., Ill.*, 267 F.3d 723, 727 (7th Cir. 2001).

on disability leave and received benefits via the State University Retirement System. Within six months of the incident, Pamon was able to drive a car and walk without any assistance. By 2004, Pamon was regularly exercising four to five times per week, and by 2005 and 2006, Pamon was able to run. Yet in November of 2004 and again in January of 2007, Pamon's primary care physician, Dr. Cornelius Rogers, submitted benefit forms stating that Pamon was disabled and could not return to duty.

As of September 2005, Pamon believed that he was able to return to duty. At that time, he wrote a letter to the Vice Chancellor of Administration stating that he wanted to return to work as a police officer. When he did not receive a response, Pamon retained counsel and counsel made inquiries at the UIC Police Department on his behalf. Counsel was informed that Pamon needed to make an appointment with the University Health Services ("Health Services") to obtain clearance to return to work. The appointment took place on December 23, 2005; Pamon was advised by Dr. David Marder and Dr. Abhijay Karandikar that he would need to obtain medical clearance from his treating physician prior to his return. The parties dispute whether a functional capacity exam ("FCE") was discussed at this appointment, although the doctors' progress notes from that date specifically state that as part of Pamon's reinstatement plan, an FCE and a "stress test" might be needed; the notes also indicate that this plan had been explained to Pamon. (*See* Def.'s Statement of Facts, ECF No. 97, Ex. 6, at 5.)

University Policy 11.09 (which applies to the UIC Police Department) provides that an employee returning from disability leave may be required to seek medical clearance before returning to work. The UIC Police Department's practice is to require the employee seeking reinstatement to get medical clearance from Health Services. In

some instances, Health Services will require that employee to undergo an FCE prior to reinstatement to ensure that the employee is physically capable of performing the duties and responsibilities of the job. For police officers, the exam is also used to ensure that it is safe for the fellow officers and for the public to have the employee return to work. Over the last ten years, four police officers have been required to undergo such exams prior to reinstatement.

Pamon sought medical clearance from his treating neurosurgeon, Dr. George Bovis. After a cerebral angiogram indicated that Pamon's AVM was completely healed and obliterated, Dr. Bovis recommended that Pamon return to work. Pamon brought a letter from Dr. Bovis with him to a Health Services appointment on April 24, 2006. This appointment was with a nurse practitioner who had only been employed at UIC for about six months. Protocol required that when medical records indicate an FCE or stress test may be needed, a nurse either has to order the tests or get an exemption; in this case, the nurse practitioner did neither. Instead, she provided Pamon with a release to return to work. When the Board realized the mistake, it advised Pamon's counsel that Pamon had to undergo an FCE before he could return.

Three FCE appointments were scheduled, and Pamon failed to appear at all three. He refused to take the FCE because he felt that the exam could not be required if his injury did not occur on the job. On November 30, 2006 Pamon filed a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), alleging that he was subjected to discrimination due to his disability. Pamon continued to receive disability benefits until March of 2007, at which time Pamon unilaterally terminated his disability benefits and sent the UIC Police

3

Department letters of resignation. He resigned because he had accepted a job with the Illinois Department of Human Services. He retained that job until July of 2008, at which time he was hired by the Illinois Department of Financial and Professional Regulation. He remains employed with the Department of Financial and Professional Regulation to this day, and does not receive any accommodation.

On June 8, 2009, the EEOC issued Pamon a right to sue letter, and Pamon filed his complaint in this court about two months later. Shortly after the Board answered Pamon's second amended complaint, he filed a motion to strike the Board's affirmative defenses and a motion for summary judgment. The court denied both motions. *See Pamon v. Bd. of Trustees of the Univ. of Ill.*, No. 09 C 5034, 2010 WL 2891643 (N.D. Ill. July 20, 2010). The Board has now moved for summary judgment. The Board also has moved to deem admitted or to strike certain of Pamon's responses to the Board's statement of facts under Local Rule 56.1, as well as to strike portions of Pamon's statement of additional facts.

## II. LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, all facts and any inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). The court is not required to make every conceivable inference in the non-movant's favor; instead, only *reasonable* inferences must be drawn. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

Further, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts"; a mere "scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Thus, once the moving party has satisfied its initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact," *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 946 (7th Cir. 2007) (internal quotations and citations omitted), the non-moving party must come forward with sufficient evidence to "allow a jury to render a verdict in her favor." *McPhaul v. Bd. of Comm'rs*, 226 F.3d 558, 563 (7th Cir. 2000). If a plaintiff fails to establish one of the elements of his case and there is no factual dispute regarding that element, summary judgment will be entered in favor of the defendant. *See Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 892 (7th Cir. 2005).

### III. ANALYSIS

**A. Local Rule 56.1 Compliance**

As noted above, Pamon is proceeding *pro se*. Taking this into account, the court has on multiple occasions instructed Pamon that he would be well served by consulting with the Northern District of Illinois' *pro se* help desk.[3] Because Pamon is *pro se*, he was also served with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. That notice clearly explains the consequences of failing

---

[3] For instance, when the court denied Pamon's motion to strike the Board's affirmative defenses and motion for summary judgment, the court provided Pamon with information regarding how to contact the *pro se* help desk. *See Pamon*, 2010 WL 2891643 at *2. And when Pamon requested appointment of counsel, the court declined to do so (based on Pamon's delay until "the last possible moment") but again encouraged Pamon to consult the help desk. (*See* Order, ECF No. 107.)

to properly respond to a motion for summary judgment and to a statement of material facts under Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

Despite these notices and warnings, Pamon has filed a response to the Board's statement of facts that does not comport with the local rules. In numerous instances, Pamon tries to avoid the underlying fact by "admitting" an entirely different fact. For instance, he has tried to shift his alleged underlying disability from his AVM to include high blood pressure or hypertension by "admitting in part" that the AVM is the disability and then "admitting" that he has high blood pressure. Similarly, in response to the Board's claim that Dr. Rogers examined Pamon in January 2007 and found that Pamon could not return to duty until January 2009, Pamon evasively responds that he "admits Dr. Rogers filled out a form in January 2007." Pamon also denies numerous facts without providing any citation to supporting evidence as required under the local rules. *See* L.R. 56.1(b).

In addition, Pamon filed his own statement of additional facts in which he disguises numerous legal arguments as "fact"; for example, he swears by affidavit that certain of his medications "[a]ffect the major life activities of sleeping and bladder control." He also swears to facts outside of his personal knowledge, such as when he swears that the UIC Police Department does not have any written policies on FCEs. A self-serving affidavit is insufficient to defeat summary judgment unless that affidavit is "based on personal knowledge" and "set[s] forth specific facts showing that there [is] a genuine issue for trial." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation omitted). And in some instances, Pamon cites to nothing but his own amended complaint in support of his facts.

The mechanism set forth by Local Rule 56.1 is not intended to trip up unsuspecting litigants; instead, it "assist[s] the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chi. Sch. Reform Bd.*, 233 F.3d 524, 527 (7th Cir. 2000) (quotation omitted). For this reason, the court is "entitled to expect strict compliance" with those rules. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). When the non-moving party fails to comply with the local rules, the court will deem admitted any facts that are not properly rebutted. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Further, the court need not consider the non-moving party's additional facts where those facts are not supported. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

While the court construes *pro se* pleadings liberally, *see Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006), "this principle does not relieve litigants from the need to take those steps required to present and preserve their claims." *Korsunskiy v. Gonzales*, 461 F.3d 847, 850 (7th Cir. 2006). Thus, for the reasons stated above, the court grants in part the Board's motion to strike certain of Pamon's responses. In particular, the court deems admitted (and will not consider extraneous argument to) the Board's statement of facts 6, 9, 11, 24, 28, 30–40, 43, 52, 54–58, 60–62, and 71–72.[4] The court also strikes Pamon's additional facts 4, 6, and 19 because the facts are not supported or are attempts at legal argument.

---

[4] Keeping the principle of *Marshall* in mind, however, the court has reviewed the record; where the court was able to discern support for Pamon's version of the facts, the court treats those facts as properly disputed. For this reason, Board's statement of fact 44 and 45 (addressing whether Pamon was informed of the FCE requirement at his first Health Services appointment) remain in dispute; in reading the transcripts, the court identified support for Pamon's position at page 156 of his deposition. The court is not obliged, however, to "sift through the record and make [a party's] case for him." *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010).

**B. ADA Claim**

The court now turns to the merits of the case. Reading the amended complaint liberally, *see Marshall*, 445 F.3d at 969, Pamon alleges three cognizable violations of the ADA: first, that the Board improperly refused reasonable accommodations for Pamon's disability by refusing to offer alternative employment and refusing to engage in the interactive process, *see* 42 U.S.C. § 12112(b)(5)(A) & 29 CFR § 1630.2(o); second, that Dr. Marder and the Board impermissibly inquired into the nature and extent of Pamon's disability, *see* 42 U.S.C. § 12112(d)(4)(A); and third, that the Board terminated Pamon's employment due to his disability in violation of 42 U.S.C. § 12112(a). In response, the Board argues that (1) Pamon is not "disabled" under the ADA, (2) the Board never took an adverse employment action against Pamon, (3) the Board did not discriminate against Pamon, and (4) Pamon is estopped from bringing his claims. The court addresses each of Pamon's claims in turn.

    1. Reasonable Accommodation

To survive summary judgment on his reasonable accommodation claim, Pamon must present evidence that (1) he is a qualified individual with a disability, (2) the Board was aware of that disability, and (3) the Board failed to reasonably accommodate the disability. *See Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009). Here, in light of the admitted facts, the court has serious doubts as to Pamon's ability to establish his "disabled" status. But even assuming he is a qualified individual with a disability, Pamon has not presented evidence that the Board failed to reasonably accommodate him. *See id.* at 976.

To establish this element, Pamon must show not only that he attempted to engage in an interactive communication process with the Board, but that the Board "was responsible for any breakdown that occurred in that process." *Id.* In other words, it is not enough to show that the Board refused to engage in the interactive process; Pamon must show that *as a result of that failure* the Board also failed to identify an appropriate accommodation. *Rehling v. City of Chi.*, 207 F.3d 1009, 1016 (7th Cir. 2000); *see Ekstrand*, 583 F.3d at 976 (when a "communication breakdown" occurs, the court must "'isolate the cause of the breakdown and then assign responsibility'") (quoting *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996)). This is perfectly sensible, as "an employer may not be obligated to provide a specifically requested modest accommodation unless the employer is made aware of its medical necessity to the employee. Indeed, the language of the ADA demonstrates that a reasonable accommodation is connected to what the employer knows about the employee's precise limitations." *Ekstrand*, 583 F.3d at 976.

Here, there is no suggestion whatsoever that Pamon requested reasonable accommodation or made the Board aware that he desired any change to his duties. As he admitted, at his December 23, 2005 appointment he told the doctors that he wanted to return to work as a police officer—not in some other capacity. And when he returned to Health Services in 2006, he tendered a March 2006 letter that, if anything, indicated he needed no accommodation; Dr. Bovis stated that Pamon had "shown complete healing" and that there was no longer any evidence of AVM. "[T]he standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th

Cir. 2000); *see E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803-04 (7th Cir. 2005) (an employee must initially "indicate to the employer that [ ]he has a disability and desires an accommodation"). Although an ambiguous notification that the employee may have a disability triggers the employer's obligation to investigate, *see Sears, Roebuck & Co.*, 417 F.3d at 804, Pamon does not satisfy this minimal standard. He simply never indicated that he needed an accommodation.[5] Thus, Pamon's failure to make his desire for accommodation known is one reason that his reasonable accommodation claim fails. Nor, if he sought alternative employment, did he meet his burden of showing that a vacant position existed for which he was qualified. *See Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001).

Another reason this claim fails is that Pamon unilaterally resigned and terminated the communication process. Because the Board did not create the communication breakdown, the Board cannot be held liable for the consequences. *See Jackson v. City of Chi.*, 414 F.3d 806, 814 (7th Cir. 2005) ("In light of this evidence, we must agree with the district court's determination that [plaintiff] was responsible for the breakdown in the interactive process and with the court's subsequent conclusion that she could not claim that the City failed to accommodate her."); *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1136 (7th Cir. 1996) ("Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process.").

---

[5] Moreover, assuming Pamon was disabled at the time, his FCE test results might have sufficed to trigger the Board's duty to investigate and accommodate—but of course, Pamon refused numerous times to take that test.

2. Impermissible Inquiries

Under § 12112(d)(4)(A), the Board is prohibited from inquiring "as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity"; the Board is, however, permitted to inquire "into the ability of an employee to perform job-related functions." *Id.* § 12112(d)(4)(B).

It appears Pamon is alleging two prohibited inquiries: first, unspecified inquiries made by Dr. Marder during Pamon's December 23, 2005 Health Services appointment; and second, inquiries made by the Board. With regard to the latter, Pamon does not spell out the precise inquiry at issue, and the court can only presume that he considers the FCE request to be the impermissible inquiry. In any case, his claim cannot succeed. The Board has presented unrebutted evidence that the inquiries made by Dr. Marder were job-related and necessary. In particular, the Board has established that it is UIC policy to require an employee returning from disability leave to seek medical clearance before returning to work, and that the UIC Police Department's practice is to require the employee to get that clearance from Health Services. As the Director of Health Services, Dr. Marder's obligation was to examine Pamon and to determine whether he was fit to return to work. The inquiries he made in that capacity are clearly job-related and permissible, and Pamon has not presented any evidence to the contrary.

Further, the Board established that Health Services requires an employee to undergo an FCE "when the nature of the injury is significant and/or the leave is extended and/or a job position requires strenuous physical demands." (*See* Def.'s Statement of Facts, ECF No. 97, ¶ 33.) All three of these factors existed here: Pamon suffered a serious stroke due to his AVM, he was on disability leave for years, and he sought to

11

return to work as a police officer. The admitted facts also establish the purpose of the FCE exam: to ensure that "the employee is physically capable of performing the duties and responsibilities of the job," and "it is safe for the fellow officers and for the public to have the employee return to work." (*See id.* ¶¶ 40, 43.) Therefore, the FCE exam was job-related and permissible under the ADA. *See Coffman v. Indianapolis Fire Dept.*, 578 F.3d 559, 565 (7th Cir. 2009) (fire department had "an obligation to the public to ensure that its workforce is both mentally and physically capable of performing what is doubtless mentally and physically demanding work," which convinced the court that an employee's referral for fitness for duty evaluations was job-related and consistent with business necessity); *Krocka v. City of Chi.*, 203 F.3d 507, 515 (7th Cir. 2000) (Chicago police officer's position "certainly presents significant safety concerns, not only for other CPD employees but for the public at large" making it "entirely reasonable, and even responsible," to have employee evaluated for fitness for duty once department learned he was having mental health issues). Neither the Board nor Dr. Marder made prohibited inquiries into the nature or severity of Pamon's alleged disability.

    3. Failure To Reinstate

Finally, the court turns to Pamon's claim that the Board discriminated by terminating him or refusing to reinstate him. In the Seventh Circuit, "[a] plaintiff seeking to avoid summary judgment must demonstrate that there is at least a genuine issue of material fact as to whether he is disabled, whether he can perform the essential functions of the position, and whether he has suffered an adverse employment action because of his disability." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 780-81 (7th Cir. 2007). As previously noted, the court has doubts as to Pamon's "disabled" status. But even

assuming he is a qualified individual with a disability, there is no question of material fact as to whether Pamon suffered an adverse employment action. He did not.

All the evidence of record establishes that Pamon is the person who made the decision to resign. He sent two letters of resignation, one to Mr. De La Paz with the Human Resources department, and one to the chief of police. Both letters state that Pamon wished to resign as a police officer "effective immediately." Pamon himself testified at his deposition that he did so because he had already gained new employment. Therefore, it is undisputed that Pamon's employment was not actually "terminated" by the Board. Nor has Pamon argued or introduced any evidence in support of a constructive discharge claim. *See Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 502 (7th Cir. 2010) (constructive discharge may occur when "based on an employer's actions, the handwriting [is] on the wall" and the employee quits in advance of termination) (quotation omitted); *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (constructive discharge may occur where "the plaintiff shows that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable"). Because there is no question that Pamon has not suffered an adverse employment action, his claims cannot survive summary judgment. *See Johnson*, 426 F.3d at 892.

## IV. CONCLUSION

For the reasons stated above, the Board's motion to strike or deem admitted certain of Pamon's statements is granted in part and denied in part, and the Board's motion for summary judgment is granted.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 8, 2011